EDP:SMF
F. #2024R00551

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

        - against -                  Docket No. 24–CR–449 (ARR)

SIMON IRVIN,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS FOUR THROUGH SIXTEEN OF THE INDICTMENT

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Sean Fern
Assistant U.S. Attorney
    (Of Counsel)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 2

PRELIMINARY STATEMENT ........................................................................................ 7

FACTUAL BACKGROUND .............................................................................................. 7

APPLICABLE LAW ........................................................................................................... 8

ARGUMENT ....................................................................................................................... 8

    I.      Section 922(g)(1) is Facially Constitutional and As Applied to the Defendant .......... 8

          A.      Binding Second Circuit Precedent Holds
that Section 922(g)(1) is Constitutional ................................................................ 9

    II.     Section 922(k) is Constitutional Both Facially and As Applied Here ....................... 13

          A.      Legal Background .............................................................................................. 13

          B.      Possession of a Firearm with an Obliterated Serial Number is Not Conduct
Protected by the Second Amendment ................................................................ 16

          C.      Section 922(k) is Consistent with the Nation's Historical Tradition of Firearm
Regulation ......................................................................................................... 19

CONCLUSION ................................................................................................................. 26

# **TABLE OF AUTHORITIES**

Page(s)

CASES

Antonyuk v. James,
   120 F.4th 941 (2d Cir. 2024) .................................................. 12

Boyce Motor Lines v. United States,
   342 U.S. 337 (1952).............................................................. 8

District of Columbia v. Heller,
   554 U.S. 570 (2008)..................................................... passim

Johnson v. Chambers,
   No. 20-3377, 2021 WL 4484929 (2d Cir. Oct. 1, 2021)........................ 11

Miller v. Bonta,
   No. 19-CV-1537 (S.D. Cal. 2022) .......................................... 20

McDonald v. City of Chicago,
   561 U.S. 742 (2010)............................................ 9, 10, 11, 18

New York State Rifle & Pistol Association v. Bruen,
   597 U.S. 1 (2022)....................................................... passim

Robertson v. Baldwin,
   165 U.S. 275 (1897)....................................................... 10, 16

Teixeira v. Cnty. of Alameda,
   873 F.3d 670 (9th Cir. 2017) ............................................... 20

United States v. Alberts,
   No. 23-CR-131, 2024 WL 1486145 (D. Mont. Apr. 5, 2024)........................ 14, 24

United States v. Alston,
   No. 23-CR-510 (MKB), 2024 WL 4118981 (E.D.N.Y. Sept. 9, 2024)................... 11

United States v. Avila,
   672 F. Supp. 3d 1137 (D. Colo. May 8, 2023) ......................... 14

United States v. Banks,
   No. 24-CR-25, 2024 WL 3251725 (E.D. Pa. June 21, 2024) ................. 24

United States v. Barnes,
   No. 23-CR-12, 2024 WL 3328593 (D. Del. July 8, 2024) ..................... 24

United States v. Bogle,
   717 F.3d 281 (2d Cir. 2013)..........................................................................10, 11

United States v. Brabham,
   No. 21-CR-342, 2024 WL 3165467 (M.D. Pa. July 3, 2024)...........................14, 24

United States v. Bradley,
   No. 2:22-CR-98, 2023 WL 2621352 (S.D.W. Va. Mar. 23, 2023) .........................14

United States v. Bryant,
   711 F.3d 364 (2d Cir. 2013)...................................................................................10

United States v. Chaney,
   No. 23-CR-451 (ARR), 2024 WL 2293759 (E.D.N.Y. May 21, 2024) ..................11

United States v. Dangleben,
   No. 3:23-MJ-44, 2023 WL 6441977 (D.V.I. Oct. 3, 2023) ....................................14

United States v. Dixson,
   No. 4:21-CR-54, 2023 WL 7416327 (E.D. Mo. Nov. 8, 2023)...............................14

United States v. Gavalo,
   No. 24-CR-80 (MKB), 2024 WL 4118468 (E.D.N.Y. Sept. 9, 2024).....................11

United States v. Gonzalez,
   No. 23-CR-6210 (CJS), 2024 WL 5336649 (W.D.N.Y. Nov. 13, 2024) ................14

United States v. Grimes,
   No. 22-CR-297 (KAM), 2023 WL 8473761 (E.D.N.Y. Dec. 7, 2023) ...................12

United States v. Hampton,
   No. 21-CR-766 (JPC), 2023 WL 3934546 (S.D.N.Y. June 9, 2023) ......................11

United States v. Holton,
   639 F. Supp. 3d 704 (N.D. Tex. 2022) .................................................15, 19, 23, 24

United States v. Jackson,
   69 F.4th 495 (8th Cir. 2023) ..................................................................................10

United States v. Jimenez,
   895 F.3d 228 (2d Cir. 2018)...................................................................................11

United States v. Marzzarella,
   614 F.3d 85 (3d Cir. 2010)...............................................................17, 18, 19, 24

United States v. Mobley,
   956 F.2d 450 (3d Cir. 1992).....................................................................................24

United States v. Pickett,
  No. 22-CR-486 (NRM), 2024 WL 779209 (E.D.N.Y. Feb. 26, 2024) .................................... 11

United States v. Price,
  111 F.4th 392 (4th Cir. 2024) ...................................................................... 15, 16, 25

United States v. Price,
  635 F. Supp. 3d 455 (S.D. W. Va. 2022) ....................................................................... 15

United States v. Rahimi,
  144 S. Ct. 1889 (2024) ...................................................................... 8, 9, 10

United States v. Rampersant,
  No. 21-CR-196 (KAM), 2023 WL 8430564 (E.D.N.Y. Dec. 5, 2023) .................................. 12s

United States v. Reyna,
  No. 3:21-CR-41, 2022 WL 17714376 (N.D. Ind. Dec. 15, 2022) ........................................... 15

United States v. Sampson,
  898 F.3d 270 (2d Cir. 2018) ..................................................................... 8

United States v. Sanders,
  No. 23-CR-78 (KAM), 2023 WL 8790309 (E.D.N.Y. Dec. 19, 2023) .................................... 11

United States v. Serrano,
  651 F. Supp. 3d 1192 (S.D. Cal. Jan. 17, 2023) ............................................... 14, 24

United States v. Sing-Ledezma,
  706 F. Supp. 3d 650 (W.D. Tex. Dec. 11, 2023) ......................................................... 14

United States v. Sternquist,
  692 F. Supp. 3d 19 (E.D.N.Y. 2023) ........................................................ 12

United States v. Thawney,
  No. 22-1399, 2025 WL 1793746 (2d Cir. June 30, 2025) ......................................... 13

United States v. Tita,
  No. RBD-21-0334, 2022 WL 17850250 (D. Md. Dec. 22, 2022) ......................................... 15

United States v. Trujillo, No. 21-CR-1,
  422 (WJ), 2023 WL 3114387 (D.N.M. Apr. 26, 2023) ........................................... 14

United States v. Walter,
  No. 3:20-CR-39, 2023 WL 3020321 (D.V.I. Apr. 20, 2023) .................................... 15

United States v. Warren,
  No. 22-CR-231 (DLI), 2023 WL 5978029 (E.D.N.Y. Sept. 14, 2023) .................................... 12

United States v. Whyte,
 No. 21-CR-390 (JMA), 2023 WL 8096926 (E.D.N.Y. Nov. 21, 2023) .................................. 12

Zherka v. Bondi,
 140 F.4th 68 (2d. Cir 2025) ........................................................................................... 9, 12, 25

## STATUTES

18 U.S.C. § 922(a)(1)(A) ....................................................................................................... 7

18 U.S.C. § 922(g)(1) ................................................................................................... passim

18 U.S.C. § 922(k) ........................................................................................................ passim

18 U.S.C. § 924(a)(1)(B) ................................................................................................. 7, 13

18 U.S.C. § 924(a)(1)(D) ....................................................................................................... 7

18 U.S.C. § 924(a)(8) ............................................................................................................. 7

18 U.S.C. § 933(a) ................................................................................................................. 7

18 U.S.C. § 933(b) ................................................................................................................. 7

New York Penal Law 265.02 ................................................................................................. 7

## RULES

Federal Rule of Criminal Procedure 12(b)(1) ...................................................................... 8

## OTHER AUTHORITIES

2 General Laws of Massachusetts from the Adoption of the Constitution to February
 1822 (1823) ...................................................................................................................... 21

3 Laws of the Commonwealth of Pennsylvania, from the Fourteenth Day of October, One
 Thousand Seven Hundred (1810) ..................................................................................... 21

6 Statutes at Large of Pennsylvania from 1682 to 1801 (1899) ........................................ 20

15 The Public Records of the Colony of Connecticut (1890).............................................. 21

Colonial Laws of Massachusetts Reprinted from the Edition of 1672 (1890) ............................. 21

David M. Kennedy et al., Youth Violence in Boston: Gun Markets, Serious Youth Offenders,
 and A Use-Reduction Strategy, 59 Law & Contemp. Probs. 147 (Winter 1996)..................... 17

Laws and Ordinances of New Netherland, 1638-1674 (1868) .................................................... 20

Laws of the Commonwealth of Massachusetts from November 28, 1780 to
    February 28, 1807 (1807) .................................................................................. 22

Laws of the Commonwealth of Massachusetts from February 28, 1807 to
    February 28, 1814 (1814) .................................................................................. 22

Laws of the State of Maine (1830) ........................................................................ 22

Laws of the State of New Hampshire; with the Constitutions of the United States
    and of the State Prefixed (1830) ....................................................................... 21

The Charter and Ordinances of the City of Providence, with the General Assembly
    Relating to the City (1835) ............................................................................... 21

Pub. L. No. 75-785 ................................................................................................. 13

Pub. L. No. 90-351 ................................................................................................. 13

Pub. L. No. 90-618 ................................................................................................. 14

Pub. L. No. 101-647 ............................................................................................... 14

## PRELIMINARY STATEMENT

The defendant, Simon Irvin, has been charged in the above-captioned indictment with multiple crimes, including: (i) firearms trafficking conspiracy, in violation of 18 U.S.C. §§ 933(a)(3) & 933(b) (Count One); (ii) firearms trafficking, in violation of 18 U.S.C. §§ 933(a)(1), 933(a)(2) & 933(b) (Count Two); (iii) unlicensed firearms dealing, in violation of 18 U.S.C. §§ 922(a)(1)(A) & 924(a)(1)(D) (Count Three); (iv) possession of a defaced firearm, in violation of 18 U.S.C. §§ 922(k) & 924(a)(1)(B) (Count Four); and (v) 12 counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(8) (Counts Five through Sixteen). He now moves to dismiss Counts Four through Sixteen on the basis that the statutes with which he has been charged were rendered unconstitutional by the Supreme Court's decision in New York State Rifle & Pistol Association v. Bruen, 597 U.S. 1 (2022). See ECF No. 51. For the reasons set forth below, the defendant's motion is meritless and should be denied.

## FACTUAL BACKGROUND

On October 24, 2024, the defendant Simon Irvin was arrested and charged by criminal complaint alleging a violation of 18 U.S.C. § 922(g)(1). See ECF No. 1. On the same date, Irvin was presented before United States Magistrate Judge Cheryl L. Pollak, who ordered the defendant subject to home confinement pending trial. See ECF No. 7.

On November 4, 2024, a grand jury returned an indictment charging Irvin with multiple firearms offenses, as described above. As relevant here, Irvin was convicted on or about January 9, 2007 in Kings County, New York Supreme Court with violating New York Penal Law 265.02 (criminal possession of a loaded firearm in the third degree), which is a

felony.  Because of the defendant's prior felony conviction, he is barred from possessing firearms.

On July 11, 2025, the defendant Simon Irvin moved to dismiss Counts Four through Sixteen, arguing that 18 U.S.C. §§ 922(g)(1) & (k) violate his Second Amendment right to keep and bear arms post-Bruen.

## APPLICABLE LAW

Federal Rule of Criminal Procedure 12(b)(1) permits defendants to file pretrial motions raising "any defense, objection or request that the court can determine without a trial on the merits."  See also United States v. Sampson, 898 F.3d 270, 278-79 (2d Cir. 2018).  In ruling on a motion to dismiss, a court views the indictment as a whole and assumes its factual allegations to be true.  See Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952).

## ARGUMENT

### I.    Section 922(g)(1) is Facially Constitutional and As Applied to the Defendant

In his motion, the defendant raises a facial and as-applied challenge to Section 922(g)(1) and argues that his possession of firearms is protected because "Section 922(g)(1)'s lifelong, categorical ban on possessing a firearm following any felony conviction infringes the Second Amendment rights of individuals like" the defendant.  See ECF No. 51.

The defendant's motion fails on multiple grounds.  First, Supreme Court and Second Circuit precedent confirm Section 922(g)(1)'s constitutionality.  Bruen did not change that landscape, and the Supreme Court's more recent decision in United States v. Rahimi, 144 S. Ct. 1889 (2024), which upheld the constitutionality of a statute prohibiting individuals subject to restraining orders from possessing firearms, only strengthens the argument for the constitutionality of the felon in possession statute.  In addition, the Second Circuit recently held

in <u>Zherka v. Bondi</u>, No. 140 F.4th 68 (2d Cir. 2025), that § 922(g)(1) is a "constitutional restriction on the Second Amendment rights of felons." <u>Id.</u> at 74.  Indeed, in <u>Zherka</u>, the Second Circuit held that Section 922(g)(1) is constitutional both on its face and as applied to nonviolent felons.  <u>Id.</u> at 96 ("We reject [the] contention that the prohibition on possession of firearms by convicted felons violates the Second Amendment as applied to 'nonviolent' felons.").  <u>Second</u>, the Court should also reject any as-applied challenge because the defendant's criminal record places him squarely within the class of people who constitutionally can and should be prohibited from carrying guns.  Indeed, as the defendant admits, his challenge to Section 922(g)(1) is foreclosed by binding Second Circuit precedent and should be denied.  <u>See</u> ECF No. 51.

### A.    <u>Binding Second Circuit Precedent Holds that Section 922(g)(1) is Constitutional</u>

A facial challenge of the kind brought by the defendant "is the most difficult challenge to mount successfully, because it requires a defendant to establish that no set of circumstances exists under which the Act would be valid."  <u>Rahimi</u>, 144 S. Ct. at 1898.  Thus, even if Section 922(g)(1) is constitutional in only some of its applications, the defendant cannot sustain a facial challenge.  <u>See id.</u>  And for the reasons detailed below, binding precedent interpreting the Second Amendment shows that 18 U.S.C. § 922(g)(1) remains constitutional.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  This Amendment protects the right of law-abiding citizens to keep arms "in defense of hearth and home."  <u>District of Columbia v. Heller</u>, 554 U.S. 570, 635 (2008); <u>see also</u> <u>McDonald v. City of Chicago</u>, 561 U.S. 742, 786 (2010) (plurality opinion).  But "the Second Amendment is not absolute.  It codified a pre-existing right, and preexisting limits on that right are part and parcel of it."  <u>Rahimi</u>, 144 S. Ct. at 1924 (Barrett, J., concurring).  The

government may regulate the possession of weapons within the constitutional bounds of the Second Amendment.  See McDonald, 561 U.S. at 786 ("[T]he right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" (quoting Heller, 554 U.S. at 626)).  While the law does not permit the government to disarm individuals simply because they are not "responsible" in a general sense, Rahimi, 144 S. Ct. at 1903; "the right secured by the Second Amendment is not unlimited" and is enjoyed only by "ordinary, law-abiding" individuals, Bruen, 597 U.S. at 8-9, 21; see also Heller, 554 U.S. at 626, 635; Robertson v. Baldwin, 165 U.S. 275, 281-82 (1897) (endorsing certain restrictions on the right to bear arms); United States v. Bryant, 711 F.3d 364, 368-69 (2d Cir. 2013).

Over the years, Congress has enacted several provisions that lawfully limit the ability of certain individuals to possess weapons.  Section 922(g)(1), for example, prohibits the possession of guns or ammunition by any individual "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).  This provision keeps firearms away from individuals with a demonstrated a proclivity to "[dis]obey the government and its laws, whether or not they ha[ve] demonstrated a propensity for violence." United States v. Jackson, 69 F.4th 495, 502 (8th Cir. 2023) (internal citation omitted).

The Second Circuit deemed § 922(g)(1) constitutional in United States v. Bogle, 717 F.3d 281 (2d Cir. 2013), which endorsed the Supreme Court's identification of laws disarming felons as one of several presumptively lawful regulations that would pass constitutional muster.  See id. (citing Heller, 554 U.S. at 626; McDonald, 561 U.S. at 786). Nothing in Bruen abrogates Bogle and its progeny, which incorporated the recognition by Heller and McDonald of the validity of certain gun laws into binding Second Circuit precedent.  See, e.g., Bogle, 717 F.3d at 281; United States v. Jimenez, 895 F.3d 228, 231-34 (2d Cir. 2018);

Johnson v. Chambers, No. 20-3377, 2021 WL 4484929 (2d Cir. Oct. 1, 2021).  The panels in these cases correctly viewed the Supreme Court's pronouncements on felon dispossession as a significant and unignorable part of the opinion.  This reasoning was not abrogated by Bruen. Bogle, for instance, did not engage in the means-end analysis rejected by Bruen.  The panel instead relied entirely on the safe harbor in Heller and McDonald.  See United States v. Hampton, No. 21-CR-766 (JPC), 2023 WL 3934546, at *12 (S.D.N.Y. June 9, 2023) ("With Heller and McDonald still in full force after Bruen, Bogle remains binding precedent within th[e] [Second] Circuit on the constitutionality of section 922(g).").  Bruen is therefore entirely consistent with prior Supreme Court and Second Circuit cases.

This Court has also recently reaffirmed the statute's constitutionality against a Second Amendment challenge, noting that it was bound by Bogle unless and until the Second Circuit overruled Bogle.  See United States v. Chaney, No. 23-CR-451 (ARR), 2024 WL 2293759, at *3 (E.D.N.Y. May 21, 2024).  The Court noted in Chaney that, at the time, it could not determine whether Bogle would "inevitably be overruled" and thus was still bound by its dictates.  Id. at *4.  The Court's decision followed and was extended by numerous decisions in this district that found § 922(g)(1) to be constitutional following Bruen.  See, e.g., United States v. Gavalo, No. 24-CR-80 (MKB), 2024 WL 4118468 (E.D.N.Y. Sept. 9, 2024); United States v. Alston, No. 23-CR-510 (MKB), 2024 WL 4118981 (E.D.N.Y. Sept. 9, 2024); United States v. Pickett, No. 22-CR-486 (NRM), 2024 WL 779209 (E.D.N.Y. Feb. 26, 2024); United States v. Sanders, No. 23-CR-78 (KAM), 2023 WL 8790309, at *2 (E.D.N.Y. Dec. 19, 2023) ("[T]he Court agrees with the Government that 18 U.S.C. § 922(g)(1) is constitutional under controlling precedent."); United States v. Grimes, No. 22-CR-297 (KAM), 2023 WL 8473761 (E.D.N.Y. Dec. 7, 2023); United States v. Rampersant, No. 21-CR-196 (KAM), 2023 WL 8430564

(E.D.N.Y. Dec. 5, 2023); United States v. Whyte, No. 21-CR-390 (JMA), 2023 WL 8096926

(E.D.N.Y. Nov. 21, 2023); United States v. Sternquist, 692 F. Supp. 3d 19, 23 (E.D.N.Y. 2023)

("[T]his Court finds § 922(g)(1) constitutional, both on its face and as applied to Defendant, on

the ground that Bruen did not disturb and, if anything, endorsed prior Supreme Court dicta

assuring the validity of 'longstanding prohibitions' of felon firearm possession"); United States

v. Warren, No. 22-CR-231 (DLI), 2023 WL 5978029, at *3 (E.D.N.Y. Sept. 14, 2023) (same).

Since Bruen, the Second Circuit decided Zherka and made clear that Bogle is in

fact still good law and remains binding precedent.  In Zherka, the Second Circuit specifically

held that its "holding in Bogle survives Bruen."  140 F.4th at 75.  Citing its reasoning in

Antonyuk v. James, 120 F.4th 941, 985 (2d Cir. 2024), in which the Second Circuit upheld New

York's "good moral character" firearms licensing requirement reasoning that the Supreme Court

in Bruen had "expressly approved licensing regimes that defined 'good moral character' similar

to New York's definition," the Second Circuit held that § 922(g)(1) is capable of constitutional

application to a broad range of felons, whose record of violent behavior or prior misuse of

firearms would manifestly make them liable to being disarmed under that standard.  Zherka, 140

F.4th at 75.  Thus, Bogle's rejection of a facial challenge to § 922(g)(1) remains good law in this

Circuit.  Id.

Likewise, in Zherka, the Second Circuit clarified that Section 922(g)(1) is

constitutional even as applied to "non-violent" felons.  Id. at 93 ("[W]e conclude that the Second

Amendment does not bar Congress from passing laws that disarm convicted felons, regardless of

whether the crime of conviction is nonviolent.").  To the extent that § 922(g)(1)'s prohibition

applies to felons as a class—without distinction as to violent or nonviolent felons—the statute is

constitutional as applied to the defendant.  See United States v. Thawney, No. 22-1399, 2025w

WL 1793746, at *2 (2d Cir. June 30, 2025) (summary order).

## II.      Section 922(k) is Constitutional Both Facially and As Applied Here

The defendant likewise argues that Count Four, which charges a violation of 18

U.S.C. § 922(k), is unconstitutional because the government "cannot prove that this prohibition

on the possession of certain firearms is consistent with the historical practice and public

understanding of the Second Amendment at the time of its ratification."  See ECF No. 51.

For many of the same reasons that Section 922(g)(1) is constitutional, Section

922(k) also survives Second Amendment scrutiny.  It does not burden conduct protected by the

Second Amendment's plain text, and it is consistent with the Nation's historical tradition of

firearm regulation—including early laws requiring inspection and marking of firearms and

gunpowder, and criminalizing alteration of such marks.

### A.      Legal Background

Section 922(k) makes it "unlawful for any person knowingly to transport, ship, or

receive, in interstate or foreign commerce, any firearm which has had the importer's or

manufacturer's serial number removed, obliterated, or altered" or "to possess or receive" any

such firearm that has, "at any time, been shipped or transported in interstate or foreign

commerce."  18 U.S.C. § 922(k); 18 U.S.C. § 924(a)(1)(B).  Congress adopted Section 922(k)'s

precursor in the Federal Firearms Act of 1938, which made it unlawful "for any person to

transport, ship, or knowingly receive in interstate or foreign commerce any firearm from which

the manufacturer's serial number has been removed, obliterated, or altered." Pub. L. No. 75-785,

§ 2(i), 52 Stat. 1250, 1251.  Congress also included an almost identical provision in the Omnibus

Crime Control and Safe Streets Act of 1968.  Pub. L. No. 90-351, § 902, 82 Stat. 197, 231.  It

then added the prohibition on "possess[ing]" a firearm with an obliterated serial number as part

of the Crime Control Act of 1990.  Pub. L. No. 101-647, § 2202(b), 104 Stat. 4789, 4856.  By its

terms, Section 922(k) does not apply to firearms manufactured or imported without serial

numbers before 1968, when Congress required serial numbers on all new and imported firearms.

See Gun Control Act of 1968, Pub. L. No. 90-618, § 102, 82 Stat. 1213, 1223.

        Since Bruen, virtually every district court has concluded that § 922(k) lies beyond

the Second Amendment's scope.  See United States v. Richardson, No. 21-CR-481 (RPK),

Minute Entry dated April 17, 2024; United States v. Gonzalez, No. 23-CR-6210 (CJS), 2024 WL

5336649, at *9-11 (W.D.N.Y. Nov. 13, 2024), report and recommendation adopted, 2025 WL

219112 (Jan. 16, 2025); United States v. Brabham, No. 21-CR-342, 2024 WL 3165467, at *5

(M.D. Pa. July 3, 2024); United States v. Alberts, No. 23-CR-131, 2024 WL 1486145, at *4 (D.

Mont. Apr. 5, 2024); United States v. Sing-Ledezma, 706 F. Supp. 3d 650, 657 (W.D. Tex. Dec.

11, 2023) (stating that a "vast majority of lower courts" that have considered the issue have

upheld Section 922(k)); United States v. Dangleben, No. 3:23-MJ-44, 2023 WL 6441977, at *7

(D.V.I. Oct. 3, 2023); United States v. Avila, 672 F. Supp. 3d 1137, 1144 (D. Colo. May 8,

2023); United States v. Trujillo, No. 21-CR-1422 (WJ), 2023 WL 3114387, at *6 (D.N.M. Apr.

26, 2023) ("The Court holds that the conduct prescribed by § 922(k) is not prescribed by the text

of the Second Amendment because the type of firearms prohibited by § 922(k) are not those

typically possessed by law-abiding citizens for lawful purposes"), appeal dismissed, 2023 WL

5093358 (10th Cir. Aug. 9, 2023); United States v. Dixson, No. 4:21-CR-54, 2023 WL 7416327,

at *5 (E.D. Mo. Nov. 8, 2023), report and recommendation adopted, 2023 WL 7102115 (Dec.

14, 2023); United States v. Bradley, No. 2:22-CR-98, 2023 WL 2621352, at *3 (S.D.W. Va.

Mar. 23, 2023); United States v. Serrano, 651 F. Supp. 3d 1192, 1210 (S.D. Cal. Jan. 17, 2023)

("A law requiring that firearms have serial numbers simply does not infringe a law-abiding citizen's right to keep and bear arms for self-defense and other lawful purposes."); United States v. Walter, No. 3:20-CR-39, 2023 WL 3020321, at *5 (D.V.I. Apr. 20, 2023); United States v. Tita, No. RBD-21-0334, 2022 WL 17850250, at *7 (D. Md. Dec. 22, 2022) ("This Court finds the conduct outlined in 18 U.S.C. § 922(k) is not protected by the Second Amendment because it does not infringe on an individual's right to bear arms "in case of confrontation" or self-defense.); United States v. Reyna, No. 3:21-CR-41, 2022 WL 17714376, at *5 (N.D. Ind. Dec. 15, 2022); United States v. Holton, 639 F. Supp. 3d 704, 710 (N.D. Tex. 2022) ("This Court does not believe that a law requiring serial numbers on firearms infringes on the right to keep and bear arms"); but see United States v. Price, 635 F. Supp. 3d 455, 464 (S.D. W. Va. 2022), rev'd and remanded, 111 F.4th 392 (4th Cir. 2024).

Most recently, in United States v. Price, 111 F.4th 392 (4th Cir. 2024) (en banc), the Fourth Circuit overturned the district court's finding that Section 922(k) was unconstitutional and instead determined that firearms with obliterated serial numbers are not "in common use for a lawful purpose" and therefore fall outside the scope of Second Amendment protection. 111 F.4th at 408. In reaching this conclusion, the Fourth Circuit identified three questions to be considered in evaluating whether the regulation burdens a right "inherent in the text" of the Second Amendment: "(1) whether the petitioners were part of the people whom the Second Amendment protects; (2) whether the weapons regulated by the challenged regulation were in common use for a lawful purpose[;] . . . and (3) whether the Second Amendment protected the petitioners' proposed course of conduct." Id. at 400 (internal quotations omitted).

Focusing on the second inquiry – "whether the weapons regulated by [Section] 922(k) are in common use for a lawful purpose" – the Fourth Circuit determined that "there is

'no compelling reason why a law-abiding citizen' would use a firearm with an obliterated serial number and that such weapons would be preferable only to those seeking to use them for illicit activities." Id. at 406. Accordingly, because there was no "common-sense reason for a law-abiding citizen to want to use a firearm with an obliterated serial number for self-defense, and [because] there [was] no evidence before [the court] that [such firearms] are nonetheless commonly lawfully used," the Fourth Circuit concluded that "firearms with obliterated serial numbers are not in common use for a lawful purpose and . . . therefore fall outside the scope of the Second Amendment's protection." Id. at 408.

**B.** **Possession of a Firearm with an Obliterated Serial Number is Not Conduct Protected by the Second Amendment**

Under Bruen, the first question when considering the constitutionality of a firearms regulation is whether "the Second Amendment's plain text covers an individual's conduct." Bruen, 142 S. Ct. at 2126. That plain text cannot be read in isolation. "[T]he Second Amendment . . . codified a pre-existing right." Heller, 554 U.S. at 592. And the Supreme Court's interpretation of the Second Amendment's plain text in several cases demonstrates that the right does not extend to possession of a firearm with an obliterated serial number because such a firearm is not "typically possessed by law-abiding citizens for lawful purposes," id. at 625, and is not necessary to protect the right to self-defense.

Heller explained that "the Second Amendment was not intended to lay down a 'novel principl[e]' but rather codified a right 'inherited from our English ancestors.'" Heller, 554 U.S. at 599 (quoting Robertson v. Baldwin, 165 U.S. 275, 281 (1897)). The English Bill of Rights, as discussed above, did not protect an unlimited right. Id. at 593. Instead, it provided that Protestants "may have Arms for their Defence suitable to their Conditions, and as allowed by Law," id. (quoting 1 W. & M., ch. 2, § 7, in 3 Eng. Stat. at Large 441). Thus, Heller

16

explained, "[l]ike most rights, the right secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626.w

Heller outlined several limitations inherent in the Second Amendment's text.  It indicated that "prohibitions on carrying concealed weapons" were lawful under the Amendment. Heller, 554 U.S. at 626.  It said the Supreme Court was not calling into question "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626-27.  And, as "another important limitation on the right to keep and carry arms," the Supreme Court said that the Amendment applies only to "the sorts of weapons" that were "in common use at the time." Id. at 627 (quotation marks omitted).  Thus, Heller said, "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." Id. at 625.

Possession of firearms with obliterated serial numbers is not protected by the Second Amendment's plain text for at least two reasons.  First, such firearms are not "typically possessed by law-abiding citizens for lawful purposes," even putting aside Section 922(k)'s prohibition on such possession.  Heller, 554 U.S. at 625.  As the Third Circuit has observed, "we . . . cannot conceive of a lawful purpose for which a person would prefer an unmarked firearm." United States v. Marzzarella, 614 F.3d 85, 99 (3d Cir. 2010).  See David M. Kennedy et al., Youth Violence in Boston: Gun Markets, Serious Youth Offenders, and A Use-Reduction Strategy, 59 Law & Contemp. Probs. 147, 174-75 (Winter 1996) (observing that the only reason to obliterate a serial number is to avoid being connected with a firearm that was stolen, involved

in a crime, or obtained in a straw purchase). Thus, Section 922(k)'s burden "will almost always fall only on those intending to engage in illicit behavior." Marzzarella, 614 F.3d at 99.

Second, Section 922(k)'s prohibition does not "infringe" on the central right protected by the Second Amendment: the right to armed self-defense. See Webster's 1828 American Dictionary of the English Language (defining "infringe" as "[t]o break; to violate; to transgress" and "[t]o destroy or hinder"). Heller "held that individual self-defense is 'the central component' of the Second Amendment right." McDonald, 561 U.S. at 767 (quoting Heller, 554 U.S. at 599). But "the presence of a serial number does not impair the use or functioning of a weapon in any way." Marzzarella, 614 F.3d at 94. A person seeking self-defense can do so with either a serialized firearm or a pre-1968 or privately made firearm lacking a serial number. Such firearms are far more common and easier to obtain than those with obliterated serial numbers. Thus, Section 922(k) does not impose a blanket prohibition on firearm possession. Rather, it narrowly targets a particular category of firearms that have been intentionally altered to prevent identification; the statute leaves undisturbed the ability of law-abiding citizens to acquire, possess and use functional, traceable firearms for lawful purposes. Its burden is thus incidental to the right to keep and bear arms.

Furthermore, any burden that Section 922(k) imposes on the right to self-defense would be even less onerous than other regulations that Bruen indicated do not infringe on that right. Bruen made clear that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality" of the "shall-issue" firearm-carry licensing schemes that existed in 43 states. 142 S. Ct. at 2138 n.9. The Supreme Court explained that "these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding

18

responsible citizens.'" Id. (quoting Heller, 554 U.S. at 635).  And Justice Kavanaugh emphasized in his concurrence (joined by the Chief Justice) that states can constitutionally require license applicants to "undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." Id. at 2162 (Kavanaugh, J., concurring).  If such administrative burdens are permissible, then Section 922(k)'s ban on possession of firearms with obliterated serial numbers—a small class of hard-to-obtain firearms—is similarly constitutional because it does not "deny ordinary citizens their right to public carry." Id. at 2138 n.9 (majority opinion).  Indeed, "[n]ot removing the serial number from a firearm" imposes only a "negligible burden." Holton, 639 F. Supp. 3d at 712.

Additionally, a law-abiding citizen would have no reason to remove a serial number from a firearm.  Serial numbers are not a firearm accessory that can easily be removed at will; they are stamped or engraved into the firearm's receiver or frame.  Defacing the serial number reduces the firearm's value both by damaging the firearm's original finish and appearance and by making it much more difficult to trace the firearm's provenance and year of manufacture.  And removing the serial number makes a firearm far less likely to be recovered if stolen.  Only someone attempting to avoid detection of a past or future crime would have a motive to obliterate a serial number.  See Marzzarella, 614 F.3d at 99.  The Second Amendment does not protect such conduct, nor does it protect the right to possess such a firearm.

**C.**    **Section 922(k) is Consistent with the Nation's Historical Tradition of Firearm Regulation**

Even if the conduct regulated by Section 922(k) were presumptively protected under the Second Amendment's plain text, the statute would be constitutional because it is "consistent with the Nation's historical tradition of firearm regulation." Bruen, 142 S. Ct. at

2130.  As explained below, Section 922(k) is analogous to historical laws regulating firearms and gunpowder—most notably laws prohibiting alteration of proof marks on gun barrels.

Indeed, Section 922(k) is consistent with a variety of historical laws regulating firearms and gunpowder. Well before serial numbers became common, colonial and state legislatures regulated firearms and the firearms trade.  See Teixeira v. Cnty. of Alameda, 873 F.3d 670, 685 (9th Cir. 2017) (en banc) ("[C]olonial governments substantially controlled the firearms trade.").  For example, Connecticut banned residents from selling firearms outside the colony.  Id.  Virginia provided that people were at "liberty to sell armes and ammunition to any of his majesties loyall subjects inhabiting this colony."  Id. at 685 n.18 (emphasis added; quotation marks omitted).  And at least six colonies made it a crime (with severe penalties) to sell or provide firearms or ammunition to Native Americans.  Id. at 685 (citing 17th-century laws from Massachusetts, Connecticut, Maryland, and Virginia); see also 6 Statutes at Large of Pennsylvania from 1682 to 1801 at 319-320 (1899) (1763 law); Laws and Ordinances of New Netherland, 1638-1674 (1868) at 18-19 (1639 ordinance), 47 (1645 ordinance), 278 (1656 ordinance).  Although not an exact analogy to Section 922(k), these laws show that colonial legislatures were concerned about the movement of firearms between private parties and the dangers of firearms falling into what were believed to be the wrong hands.

Additionally, several states had laws relating to the inspection and marking of gunpowder, which "was essential to the operation of firearms at that time," meaning that gunpowder regulations "necessarily affected the ability of gun owners to use firearms for selfdefense." Miller v. Bonta, No. 19-CV-1537 (S.D. Cal. 2022) (Dkt. 137-3 at 22) (Declaration of Prof. Saul Cornell); cf. Bruen, 142 S. Ct. at 2149 (citing article by Cornell).  In 1795, Pennsylvania enacted a law requiring gunpowder stored in the public magazine to be proved and

marked and prohibiting importation, transfer, or sale of any gunpowder that was not appropriately marked.  3 Laws of the Commonwealth of Pennsylvania, from the Fourteenth Day of October, One Thousand Seven Hundred 240-44 (1810).  In 1809, Massachusetts required the inspection of all gunpowder manufactured in the commonwealth or stored in a public magazine, with the inspector marking each cask as either "Massachusetts Inspected Proof" or "Condemned" and adding his name and the year.  2 General Laws of Massachusetts from the Adoption of the Constitution to February 1822, at 199 (1823).  The law imposed a fine of between $200 and $500 on any person who sold any condemned powder or "fraudulently alter[ed], or deface[d] any mark, or marks, placed by any inspector upon any cwask or casks containing gunpowder."  Id. New Hampshire adopted a very similar law in 1820.  Laws of the State of New Hampshire; with the Constitutions of the United States and of the State Prefixed 277 (1830).

Colonial and early state governments likewise prohibited the manufacture and transportation of gunpowder without a license.  See Colonial Laws of Massachusetts Reprinted from the Edition of 1672, at 126 (1890) (1651 statute) ("no person . . . shall transport any Gunpowder out of this Jurisdiction, without license first obtained from some two of the Magistrates"); 15 The Public Records of the Colony of Connecticut 191 (1890) (1775 statute) (no "gun-powder made and manufactured . . . shall be exported out of the [Colony] without . . . license"); The Charter and Ordinances of the City of Providence, with the General Assembly Relating to the City 37 (1835) (1821 law) (prohibiting selling gunpowder within the town of Providence "without having a license therefor").

Most importantly, at least two states in the early republic required gun barrels to be proved and marked and prohibited the obliteration of the proof marks.  See Heller, 554 U.S. at 605 (observing that examining the "public understanding of a legal text in the period after its

enactment or ratification" is "a critical tool of constitutional interpretation") (emphasis omitted).
In 1805, Massachusetts adopted a law for the appointment of "provers of fire arms" to "prove all
musket barrels and pistol barrels" presented to them in exchange for a set fee." Laws of the
Commonwealth of Massachusetts from November 28, 1780 to February 28, 1807, at 259 (1807).
The law was adopted to prevent firearms from being "introduced into use which are unsafe, and
thereby the lives of the citizens be exposed." Id.

      Under the Massachusetts law, the prover was required to "stamp" the barrel
"within one and an half inches of the breech" with the prover's initials, the letters "P." and "M.,"
and the year—all in "letters and figures . . . so deeply impressed . . . as that the same cannot be
erased or disfigured." Laws of the Commonwealth of Massachusetts, supra, at 260. The act
imposed a fine on any person who manufactured within the Commonwealth "any musket or
pistol, without having the barrels proved and stamped as aforesaid." Id. at 260. It also imposed
a fine for selling, delivering, or purchasing any unmarked musket or pistol manufactured in the
Commonwealth. Id. at 260-61. And it imposed a fine for any person who "shall falsely forge or
alter the stamp of any prover of fire-arms . . . impressed on any musket or pistol barrel." Id. at
261. Massachusetts slightly amended the act in 1814 but kept the provision prohibiting
alteration of the prover's stamp. Laws of the Commonwealth of Massachusetts from February
28, 1807 to February 28, 1814 at 536-37 (1814).

      Similarly, Maine in 1821 passed a law requiring the appointment of "suitable
persons, to be provers of the barrels of all new, or unused firearms." Laws of the State of Maine
546 (1830). Each prover was required (in exchange for compensation) to "prove and try the
strength of the barrels of all firearms which shall be offered to him for that purpose, in such
manner as to satisfy himself of the strength of the same," to "in a permanent manner, mark and

number every barrel by him so proved," and to provide a certificate attesting to the proof.  Id. The statute imposed a fine on any person who "shall sell or offer for sale within this State, any new, or unused musket, rifle or pistol barrel, without having the same first proved, marked and certified."  Id.  Additionally, it imposed a fine for any person who "shall falsely alter the stamp or mark or the certificate of any prover of firearms."  Id.

Although these statutes are not identical to Section 922(k), they are "relevantly similar."  Bruen, 142 S. Ct. at 2132.  They imposed traceability requirements and penalized tampering with identifying marks—serving the same goals of accountability, safety and preventing the spread of unregulated or dangerous firearms.  Bruen made clear that the government need only identify a "historical analogue, not a historical twin."  Id. at 2133.  The ultimate question is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified."  Id. at 2133.  As explained above, Section 922(k) imposes a minimal "burden on the right of armed self-defense" because marked firearms are ubiquitous and just as effective for self-defense as unmarked firearms.  That burden is no greater than the burdens imposed by historical laws relating to the sale and marking of firearms and gunpowder.  And neither the historical laws nor Section 922(k) deprived citizens of the use of firearms for self-defense.  See Holton, 639 F. Supp 3d at 712 (observing that "[n]ot removing the serial number from a firearm" is a "negligible burden" compared to historical restrictions on firearm possession).

Section 922(k) is also "comparably justified."  The historical regulations on commerce in firearms were designed to keep firearms out of the hands of those who the legislators at the time viewed as potentially dangerous.  And the laws requiring marking of gun barrels and gunpowder were designed to protect citizens from explosions and to allow unsafe

barrels or powder to be traced to the inspector who first affixed the markings.  Section 922(k)

serves similar purposes by allowing authorities to recover stolen firearms and trace firearms that

have been used in a crime.  See Marzzarella, 614 F.3d at 98; United States v. Mobley, 956 F.2d

450, 454 (3d Cir. 1992).  Although Section 922(k) does not reflect precisely the same legislative

priorities as these historical regulations, it nevertheless imposes a "comparable burden" that is

"comparably justified."  Bruen, 142 S. Ct. at 2133.

Indeed, district courts considering the question after Bruen have correctly

determined that "§ 922(k) is consistent with this Nation's history and tradition of firearm

regulation."  Serrano, 2023 WL 2297447, at *12; see, e.g., United States v. Barnes, No. 23-

CR-12, 2024 WL 3328593, at *6 (D. Del. July 8, 2024) ("I find the historic evidence sufficient to

show a history and tradition of marking firearms, as well as punishing the removal of the

markings[;] [t]herefore, § 922(k) is constitutional on its face and does not violate [d]efendant's

Second Amendment rights"); Brabham, 2024 WL 3165467, at *6 ("[t]hese regulations operated

to control who could possess firearms and show the beginnings of legislative efforts to track

firearms, which operate to achieve the same purposes as § 922(k)"); United States v. Banks, No.

24-CR-25, 2024 WL 3251725, at *4 (E.D. Pa. June 21, 2024) ("[a]lthough § 922(k) . . . is not a

dead ringer for the historical regulations of marking and tracing firearms and gunpowder, it is

analogous enough to pass constitutional muster") (internal quotations omitted); Alberts, 2024

WL 1486145 at *5 ("[w]hile the Act did not punish just the possession of such a firearm, it

punished those who sold and purchased unmarked firearms, effectively restricting the possession

of unmarked firearms"); Holton, 639 F. Supp. 3d at 711-12 ("[t]hese historical regulations and §

922(k), while effected by different means, address similar goals . . . [and] place comparable

burdens on the right of armed self-defense[;] . . . [t]hus, because § 922(k) is consistent with the

24

Second Amendment's text and historical understanding, the [c]ourt finds that § 922(k) is constitutional") (internal quotations omitted).

The Second Circuit's decision in <u>Zherka</u> reinforces this point.  In upholding the prohibition on firearm possession by felons, the Second Circuit emphasized that modern firearm restrictions may be upheld when they are "relevantly similar" to historical analogues.  140 F.4th at 92.  Like the restriction upheld in <u>Zherka</u>, Section 922(k) is part of a longstanding tradition of laws designed to ensure that firearm possession is traceable, responsible and subject to accountability.  Requiring serial numbers—and criminalizing the possession of firearms with obliterated serial numbers—advances a historical public safety interest akin to the disarmament of dangerous individuals or regulation of particularly dangerous weapons.  Serial numbers enable law enforcement to trace firearms recovered at crime scenes, assist in identifying straw purchasers and trafficking networks, and deter unlawful distribution.

Likewise, to the extent <u>Zherka</u>'s decision is premised on the constitutional validity of felon dispossession laws, that reasoning would certainly extend to the dispossession of felons like the defendant of firearms with obliterated serial numbers.  <u>See</u> <u>Price</u>, 111 F.4th at 14 (Agee, J., concurring in judgment) ("[I]f he can be constitutionally prohibited from possessing <u>any</u> firearm without running afoul of the Second Amendment, then he can surely be prohibited from possessing a discrete subset of firearms—namely, firearms with obliterated serial numbers—without running afoul of it too.") (emphasis in original).

## <u>CONCLUSION</u>

For the reasons stated above, the defendant's motion to dismiss Counts 4 through 16 should be denied in its entirety.

Dated:     Brooklyn, New York
           July 31, 2025

                    Respectfully submitted,

                    JOSEPH NOCELLA, JR.
                    UNITED STATES ATTORNEY
                    Eastern District of New York
                    Attorney for Plaintiff
                    271 Cadman Plaza East
                    Brooklyn, New York 11201

          By:    /s/ Sean Fern
                    Sean Fern
                    Assistant United States Attorney
                    (718) 254-6195