UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    -against-

SIMON IRVIN,

            *Defendant.*

24-CR-449 (ARR)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

On November 4, 2024, a grand jury returned a sixteen-count indictment (the "Indictment") against defendant, Simon Irvin. Indictment, ECF No. 11. As relevant here, Count Four of the Indictment charges Mr. Irvin with possession of a defaced firearm, in violation of 18 U.S.C. § 922(k), and Counts Five through Sixteen charge Mr. Irvin with twelve counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922 (g)(1). Mr. Irvin now moves to dismiss Counts Four through Sixteen, contending that the statutes creating those offenses violate the Second Amendment in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Mot. to Dismiss, ECF No. 51. ("Def.'s Mot.")]

I disagree, and DENY the motion in its entirety.

I.    **The *Bruen* Methodology**

"Under *Bruen*, a court assessing firearm regulations must first consider whether 'the Second Amendment's plain text covers an individual's conduct.'" *Zherka v. Bondi*, 140 F.4th 68, 73 (2d Cir. 2025) (quoting *Bruen*, 597 U.S. at 24). If the court concludes that the conduct is covered, "the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. The government then bears the burden of "justify[ing] its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. Restated, *Bruen*

1

mandates a two-step analytical framework: a textual prong that turns on "the text of the Second Amendment" and a historical prong that examines "the history of firearms regulation in this country." *Zherka*, 140 F.4th at 73.

## II.     Section 922(g)(1) Is Constitutional

Section 922(g)(1) provides that it "shall be unlawful for any person—who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year. . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922 (g)(1).

As Mr. Irvin acknowledges, his Second Amendment challenge to § 922(g)(1) "is currently foreclosed," Def.'s Mot. at 2, by the Second Circuit's post-*Bruen* decision in *Zherka*, 140 F.4th at 77. In that case, the Second Circuit held that § 922(g)(1) is facially constitutional and not amenable to as-applied challenges. *Id*. at 77, 93–96. Specifically, the court clarified that § 922(g)(1) is constitutional as applied to *any* felon, regardless of whether their prior felony was violent or non-violent. *Id*. at 96.

I therefore deny Mr. Irvin's motion to dismiss Counts Five through Sixteen of the Indictment.

## III.    Section 922(k) Is Constitutional

Section 922(k) provides that "[i]t shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign

commerce." 18 U.S.C. § 922 (k)(1). In essence, § 922(k) prohibits possession, receipt, or transport of a firearm with an obliterated serial number.

*Bruen* reaffirmed that "the right [to bear arms] [i]s not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Bruen*, 597 U.S. at 21 (quotation marks omitted). Critically, the *Bruen* Court repeatedly emphasized that "the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *Id*. (quoting *District of Columbia v. Heller* 554 U.S. 570, 627 (2008) (quotation marks omitted)). Thus, in "accord[ance] with the historical understanding of the scope of the right," the Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes[.]" *Heller*, 554 U.S. at 625. Interpreting *Bruen*'s language, the Second Circuit has explained "that history is relevant only if the Second Amendment's plain text covers an individual's conduct, and this threshold inquiry requires courts to consider," among other things, "whether the weapon concerned is in common use[.]" *Antonyuk v. James*, 120 F.4th 491 981 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1900 (2025) (quotation marks and citation omitted); *see also United States v. Rush*, 130 F.4th 633, 640 (7th Cir. 2025), *petition for cert. filed*, No. 24-1259 (concluding that short-barreled rifles are not "arms" protected by the Second Amendment because "[t]he record does not show such firearms are commonly used by ordinary, law-abiding citizens for a lawful purpose like self-defense").

Applying *Bruen*'s framework to the conduct prohibited by § 922(k), I agree with the Fourth Circuit that firearms with obliterated serial numbers fall outside the scope of the Second Amendment—*i.e.*, that they are not weapons that are in common use for lawful purposes. *See United States v. Price*, 111 F.4th 392, 406–408 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1891

3

(2025). There exists no "common-sense reason for a law-abiding citizen to want to use a firearm with an obliterated serial number for self-defense, and there is no evidence before us that they are nonetheless commonly lawfully used." *Id*. at 408. Accordingly, such firearms "fall outside the scope of the Second Amendment's protection." *Id*.

Even if defaced firearms were implicated by the Second Amendment, regulation of such weapons is amply supported by our historical tradition. Regardless of whether the regulation of "dangerous and unusual weapons" is understood as part of the textual or historical prongs of the Second Amendment, defaced firearms falls within that category of arms. *Price*, 111 F.4th at 406–408 As the Seventh Circuit has explained, "since before our founding, continuing through the lives of the founding generation, and even lasting until today there has stood an unbroken line of common sense regulations permitting our duly elected representatives to limit weapons where the likely use for the weapon is a violent breach of the peace." *Rush*, 130 F.4th at 643. That "is the unmistakable purpose of surety laws, riding while armed limitations, and the long-recognized need to place dangerous and unusual weapons in a category of their own." *Id*. Because the only conceivable purpose of preferring a defaced firearm is to conceal its use from law enforcement, § 922(k) falls comfortably within our nation's tradition of regulating those "weapon[s] more appealing to those who intend to wield the firearm for unlawful use." *Id*.

I therefore deny Mr. Irvin's motion to dismiss Counts Four of the Indictment.

SO ORDERED.

                                                        /s/
                                          Allyne R. Ross
                                          United States District Judge

Dated:                August 15, 2025
                      Brooklyn, New York